**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| HARTFORD ACCIDENT AND INDEMNITY COMPANY, et al., | ) | Case No. 4:26-CV-01086-JSD |
| Plaintiffs / Counterclaim Defendants, | ) | |
| v. | ) | |
| FISHER CONTROLS INTERNATIONAL LLC, et al., | ) | |
| Defendants / Counterclaim Plaintiffs. | ) | |

**FISHER'S MEMORANDUM IN OPPOSITION TO**
**HARTFORD'S MOTION TO DISMISS FISHER'S COUNTERCLAIM**

Hartford asks this Court to end Fisher's coverage dispute at the pleading stage by treating a separate 2025 settlement with Monsanto and boilerplate language in that agreement as erasing Hartford's ongoing obligations under decades-old Policies and Amendment No. 1. Taking Fisher's factual allegations as true, however, Hartford's own conduct shows the opposite: by using the 2025 Settlement to exhaust shared limits while still invoking Fisher's releases and reduced reimbursement percentages, and by filing this lawsuit seeking a declaration that it owes Fisher nothing under the original Policies, Hartford has repudiated its coverage obligations, materially breached Amendment No. 1, and created a live controversy warranting declaratory relief. Rule 12(b)(6) does not permit Hartford to convert those fact-intensive disputes into threshold pleading defects, and Fisher's counterclaims plausibly allege repudiation, breach, and an actual case or controversy that should proceed beyond the pleading stage.

**FACTS ALLEGED IN THE COUNTERCLAIM**

This litigation concerns a series of excess umbrella and excess liability policies (the "Policies") Hartford issued to Monsanto and related entities; Fisher qualifies as an insured entitled to coverage under those Policies because its predecessor was part of the Monsanto corporate family during the relevant policy period. ECF 45, Fisher's Counterclaim ("Countercl.") at ¶¶ 14–21. The Policies provide excess coverage above specified underlying layers and require Hartford to defend and indemnify Fisher against covered claims and to reimburse Fisher for defense costs and settlement payments at the full policy rates. Countercl. ¶¶ 15, 64–65. Fisher now faces asbestos-related legacy suits that implicate coverage under the Policies for personal injury and related liabilities. Countercl. ¶¶ 15, 19–21.

In 2013, Hartford and Monsanto entered into a Confidential Settlement and Release Agreement (the "2013 Agreement") to resolve non-environmental product and premises liabilities through a forward-looking reimbursement regime. Countercl. ¶¶ 22–23. After several years of negotiations, Hartford, Monsanto, and Fisher executed Amendment No. 1 in 2021 to integrate Fisher into the existing settlement structure. In exchange for releasing certain rights under the Subject Policies, Fisher obtained structural protections in Amendment No. 1, including a pay-first, invoice-priority reimbursement framework on future defense and indemnity costs, erosion tracking, and good-faith collaboration on policy exhaustion. Countercl. ¶¶ 3, 26–32. Hartford agreed to pay Fisher a lump-sum "Fisher Past Cost Settlement Amount" of $195,000 to resolve past reimbursement disputes regarding Fisher's historical asbestos-related defense and indemnity costs. Countercl. ¶¶ 3, 24–26, 31–32.

In 2025, Hartford and Monsanto entered into a new settlement (the "2025 Settlement") without including Fisher as a party. Countercl. ¶¶ 4, 38, 52–53. The 2025 Settlement prepaid

Monsanto's future costs, treated shared limits as exhausted, and eliminated the invoice-priority, erosion-tracking, and collaborative framework that Amendment No. 1 required, leaving Fisher without the benefit of its bargain. Countercl. ¶¶ 45–53, 68–69. Among other things, nine shared Policies were effectively exhausted in connection with the 2025 Settlement; yet, even after removing Monsanto from the framework, Hartford continues to invoke Fisher's releases and reduced reimbursement percentages. Countercl. ¶¶ 45–49, 52–53, 68–69, 75.

On September 20, 2025, Hartford sent Fisher a notice that certain shared Policies were exhausted, and Fisher treated that notice as triggering the dispute-resolution process required by Amendment No. 1. Countercl. ¶¶ 45–51. Yet, before the parties could resolve their differences through the contractual dispute-resolution process, Hartford filed this lawsuit. Countercl. ¶¶ 45-54; *id.* ¶¶ 1–3. In its Complaint, Hartford alleges Amendment No. 1 "replaced Hartford's obligations for Fisher Claims under the Subject Policies" and seeks a declaration it "has no obligation to Fisher and Emerson under the Subject Policies other than as provided in Amendment No. 1" and "owes no obligation to pay additional defense and indemnity costs for Fisher Claims under exhausted Subject Policies." Compl. ¶ 87; Compl., Prayer for Relief ¶ D; Countercl. ¶¶ 55–56, 82. Hartford's litigation position and its reliance on the 2025 Settlement—while continuing to invoke Fisher's releases and reduced reimbursement rates—constitute a definite, unequivocal repudiation of Hartford's coverage obligations under the original Policies. Countercl. ¶¶ 57–61, 63–68. In response, Fisher filed its Counterclaim.

## **LEGAL STANDARD**

A complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Thus, "to survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is

plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The Court must accept as true all factual allegations in the complaint. *Id.* at 678-79. The Eighth Circuit applies this standard by asking whether well-pleaded factual allegations, accepted as true and viewed in the light most favorable to the non-movant while disregarding mere legal conclusions or unwarranted inferences, permit a reasonable inference that the defendant is liable. *See Smithrud v. City of St. Paul*, 746 F.3d 391, 395 (8th Cir. 2014); *Sanderson v. Bailey*, No. 4:23CV1242 JAR, 2024 WL 3010807, at *3 (E.D. Mo. June 14, 2024); *Ash v. Anderson Merchs., LLC*, 799 F.3d 957, 960 (8th Cir. 2015).

## ARGUMENT

Hartford's motion to dismiss assumes that, if Hartford is right on the merits, Fisher's counterclaims must fail. That is not the Rule 12(b)(6) standard. Taking Fisher's factual allegations as true, Fisher has plausibly alleged that Hartford repudiated its coverage obligations under the Policies by filing this lawsuit and that Hartford breached Amendment No. 1. Countercl. ¶¶ 36–53, 80–85. Hartford's contrary merits arguments go to who is right on that dispute, not to whether Fisher has stated claims that may proceed past the pleading stage.

### I. The Court should disregard all materials proffered by Hartford that are not contained or referenced in Fisher's Counterclaim as being outside the pleadings.

The Eighth Circuit has made clear that "matters outside the pleading may not be considered" by a court when ruling on a motion to dismiss pursuant to Rule 12(b)(6). *Ashanti v. City of Golden Valley*, 666 F.3d 1148, 1151 (8th Cir. 2012) (quotation omitted). The court should disregard a document presented for the first time as an exhibit to a motion to dismiss unless it is incorporated by reference in the pleading, subject to judicial notice, a matter of public record, appears in the record of the case, or is "necessarily embraced by the pleadings." *Porous Media*

*Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999) (quotation omitted); *Dittmer Props., L.P. v. FDIC*, 708 F.3d 1011, 1021 (8th Cir. 2013). Fisher requests exclusion of such matters pursuant to Rule 12(d).

**A. Hartford Exhibit 3 should be disregarded as outside the pleadings.**

Hartford Exhibit 3 is the type of document that should be disregarded as outside the pleadings. Hartford describes Exhibit 3 as Monsanto's "demand for payment," and then asks the Court to view Exhibit 3 as an "invoice" for purposes of Amendment No. 1. Fisher never mentions, describes, or otherwise makes any Monsanto demand for payment (or invoice) a part of its Counterclaim. Exhibit 3 is not a matter of public record (it says it is a Confidential Settlement Communication), is not subject to judicial notice, and is not part of the record of the case. Accordingly, Exhibit 3 is a matter outside the pleading that the Court should disregard.

Disregarding Exhibit 3 at this stage is appropriate given the document nowhere states it is a "demand for payment" or an "invoice," and appears to be two pages from a larger settlement communication. This raises questions about the authenticity and completeness of Exhibit 3, which provides an independent basis for viewing the document as outside the pleadings. *See, e.g.*, *Mengel v. Nat'l Lab. Contractors, Inc.*, No. 26-CV-39-CJW-KEM, 2026 WL 1693015, at *4 (N.D. Iowa Apr. 17, 2026). In addition, Exhibit 3 is marked as a confidential settlement communication and expressly invokes Federal Rule of Evidence 408, which bars the use of compromise communications "to prove or disprove the validity or amount of a disputed claim."

Finally, even if considered, the Court should reject Hartford's characterization of Exhibit 3 as an "invoice" for purposes of Amendment No. 1. Exhibit 3 includes <u>future</u> costs (which it refers to as "Accrued Costs"), but Section 5.6 of both Amendment No. 1 and the 2013 Agreement makes clear that an "invoice" only refers to a document seeking "reimbursement" of <u>past</u> costs. When a document is considered for purposes of ruling on a Rule 12(b)(6) motion, all reasonable inferences

from that document must be drawn in favor of the non-moving party. What Hartford urges, which is that Exhibit 3 be considered and inferences from that document be drawn against Fisher, "violates the familiar axiom that on a motion to dismiss, inferences are to be drawn in favor of the non-moving party." *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 595 (8th Cir. 2009).

**B. Hartford Exhibit 4 is also outside the pleadings.**

Hartford Exhibit 4 likewise should be disregarded as outside the pleadings. This email is not mentioned or described in, or otherwise made a part of, the Counterclaim. Hartford contends Exhibit 4 is referenced in Paragraph 44 of the Counterclaim. It is not. Paragraph 44 alleges the substance of what Fisher was told in late 2024: the 2025 Settlement would not materially impair Fisher's rights and that Fisher did not need to participate. Paragraph 44 does not quote, describe, or rely on the contents of any particular document, and none of Fisher's claims depend on Exhibit 4. Documents necessarily embraced by the pleadings include those whose contents are alleged in the pleading and whose authenticity no party questions. *See Zean v. Fairview Health Servs.*, 858 F.3d 520, 526 (8th Cir. 2017). Exhibit 4 is not such a document. Even if the Court were to consider Exhibit 4, it should not use it to draw inferences against Fisher. *Braden*, 588 F.3d at 595. Again, Exhibit 4 is not a matter of public record, is not subject to judicial notice, and is not part of the record of the case. Accordingly, Exhibit 4 is a matter outside the pleading that the Court should disregard at this pleading stage.

**C. Hartford's self-serving factual assertions are outside the Counterclaim.**

Hartford's memorandum is salted with statements of purported facts that are not contained in Fisher's Counterclaim. For example, Hartford asserts that "Fisher was informed of and invited to discuss the agreement-in-principle between Hartford and Monsanto. Fisher never asked any questions, never contacted Hartford's counsel, never sought more information, and never stated any objections or concerns." (Hartford Mem. at 11-12.) These assertions are not part of the

Counterclaim, and they go beyond, and in part contradict, Paragraphs 38–44 of the Counterclaim, which expressly allege Fisher was not invited, was never shown drafts, and was told its rights would not be impaired. Accordingly, such assertions should be disregarded by the Court. Were these statements made by counsel for Hartford in oral argument, they would be ignored, as "'matters outside the pleadings' include … statements of counsel … raising new facts not alleged in the pleadings." *McAuley v. Fed. Ins. Co.*, 500 F.3d 784, 787 (8th Cir. 2007) (quotation omitted). The same rule applies to the current attempt by Hartford's counsel to obtain dismissal of Fisher's counterclaim by raising new facts not alleged therein.

**D. No inferences from Exhibit 2 should be drawn *against Fisher*.**

Exhibit 2 is the settlement agreement with Monsanto (not Fisher) that Hartford has kept secret. Countercl. ¶¶ 42–43. Fisher is not challenging that Exhibit 2 is part of the pleadings, but objects to Hartford now parading Exhibit 2 before the Court to support its self-serving assertions of lack of harm to Fisher. For example, it states that "Hartford's entering into a settlement … not only preserved Fisher's rights but gave Fisher *better* rights." Hartford Mem. at 12 (emphasis in original). Such statements are nothing more than inferences that Hartford is asking the Court to draw against Fisher. The Court should reject Hartford's request, on the ground that it "violates the familiar axiom that on a motion to dismiss, inferences are to be drawn in favor of the non-moving party." *Braden*, 588 F.3d at 595. Rejection is particularly warranted in connection with Exhibit 2, as the Counterclaim is replete with allegations of harm to Fisher. For example, the fact of non-payment is alleged in Paragraph 77 of the Counterclaim: "Fisher has submitted invoices for defense costs and settlement payments that Hartford has refused to reimburse." Hartford nowhere disputes this allegation in its motion to dismiss.

## II. Fisher states a claim that Hartford repudiated the Policies in Counterclaim I.

### A. The language of the 2025 Settlement does not alter the reality alleged in Fisher's Counterclaim.

The operative language of the 2025 Settlement does not change the reality Fisher has pled: Hartford's deal with Monsanto impaired Fisher's bargained-for rights and supports a plausible repudiation claim. Hartford leans on the 2025 Settlement's boilerplate to say that agreement "does not affect" Fisher's rights. But Fisher is not a party to that contract, never negotiated its terms, and was not provided a copy of the agreement until Hartford filed its motion to dismiss. Hartford cannot use self-serving language in a separate, Monsanto-only settlement to rewrite the factual consequences Fisher has alleged for its own rights under Amendment No. 1 and the Policies. *See, e.g.*, *Axiom Prod. Admin., Inc. v. O'Brien*, No. 4:20-CV-01333-MTS, 2024 WL 21467, at *9 (E.D. Mo. Jan. 2, 2024) (the rights and liabilities of a non-party are unaltered by a contract). By pointing to the 2025 Settlement and insisting that it leaves Fisher untouched, Hartford tries to obscure the real issue. Hartford used that settlement to exhaust shared Policies to Fisher's detriment while still insisting that Amendment No. 1's releases and reduced reimbursement rates bind Fisher, a contradiction that itself supports anticipatory repudiation.

Fisher's allegations satisfy Rule 12(b)(6). Under *Twombly*/*Iqbal*, as applied by the Eighth Circuit, a complaint survives dismissal when it pleads enough factual matter, accepted as true, to state a facially plausible claim to relief rather than mere labels, conclusions, or threadbare recitals of the elements. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Smithrud v. City of St. Paul*, 746 F.3d 391, 395 (8th Cir. 2014); *Sanderson v. Bailey*, No. 4:23CV1242 JAR, 2024 WL 3010807, at *2 (E.D. Mo. June 12, 2024). Fisher alleged what the 2025 Settlement actually did: treated shared limits as exhausted and abandoned the invoice-by-invoice priority, erosion tracking, and collaborative framework that

Amendment No. 1 required. Fisher alleges, among other things, that nine shared Policies were effectively exhausted in connection with the 2025 Settlement—policies from which Fisher can no longer seek reimbursement under the Amendment No. 1 framework it bargained for. Countercl. ¶¶ 45–49, 68–69, 75. Fisher alleges that the 2025 Settlement stripped away Amendment No. 1's first-in-time reimbursement structure, erosion tracking, and collaborative claims-management provisions, undoing the very reimbursement framework and priority protections for which Fisher gave up a more favorable allocation model and granted Hartford broad releases. Countercl. ¶¶ 26–32, 52–53, 60–61, 75–77. Taken together with Fisher's allegations that Hartford entered a second contract fundamentally inconsistent with Amendment No. 1 and thereby impliedly rescinded it, that Hartford now invokes that settlement to claim exhaustion of the shared Policies, and that Hartford has filed this lawsuit seeking a declaration it has no obligations under the Policies other than as provided in Amendment No. 1, Fisher has more than plausibly alleged that Hartford has repudiated its coverage obligations notwithstanding any contrary language in the 2025 Settlement.

### B. Hartford cannot retain Fisher's Releases while removing the very foundation of Fisher's bargain.

Hartford tries to recast Fisher's claim as if it turned on the $195,000 past-cost payment, suggesting Fisher was required to tender that sum back to effectuate rescission. But that framing is misleading and beside the point. Fisher does not complain about Hartford's handling of past invoices. Those backward-looking amounts were resolved by the $195,000 payment. Countercl. ¶¶ 24–26, 31–32. What is at issue in this case is Hartford's forward-looking performance under Amendment No. 1—its ongoing obligation to participate in the invoice-priority reimbursement framework and to honor Fisher's sequencing and erosion-tracking protections going forward. Countercl. ¶¶ 3, 26–32, 36, 52, 68, 75. Hartford can no longer meet that obligation because it

removed the very foundation of Fisher's bargain when it entered the 2025 Settlement without Fisher. Countercl. ¶¶ 1–4, 36–45, 52–53, 58–61.

Fisher's claim targets Hartford's destruction of its forward-looking obligations under Amendment No. 1, not any backward-looking payment. Countercl. ¶¶ 1–4, 36–53, 62–69. Fisher gave up rights under the Policies—including a more favorable allocation model that would have entitled it to greater insurance proceeds—in exchange for Hartford's commitment to a forward-looking reimbursement framework and to contribute to Fisher's future defense and indemnity costs. Countercl. ¶¶ 3, 26, 31–32. Without that forward-looking framework in place, Hartford should not be permitted to retain the benefit of Fisher's broad releases and reduced reimbursement percentages. A once-valid contract becomes unenforceable when the performance bargained for cannot be rendered. *See, e.g.*, *In re MJK Clearing, Inc.*, 408 F.3d 512, 515 (8th Cir. 2005) (explaining that when there is failure of consideration, a contract valid when formed becomes unenforceable because the performance bargained for has not been rendered); *Folkers v. Sw. Leasing*, 431 N.W.2d 177, 181 (Iowa Ct. App. 1988) (holding rescission appropriate where a material breach substantially defeats the object of the contract and leaves the subject of the contract "substantially different from what was contracted for").[1] Fisher bargained for and Hartford agreed to a continuing reimbursement framework—with invoice-by-invoice priority, transparent erosion tracking, and collaborative claims management—in exchange for Fisher's releases. Countercl. ¶¶ 26–32. Hartford's 2025 Settlement with Monsanto, however, collapsed that framework by exhausting nine shared Policies at once, prepaying Monsanto's future costs, and abandoning the

---

[1] Hartford incorrectly assumes Missouri law applies to Amendment No. 1, because under Missouri's most-significant-relationship test, Iowa, as Fisher's home state, has the most significant relationship to Amendment No. 1 as it was negotiated, executed, and performed in Iowa. *See Ameristar Jet Charter, Inc. v. Dodson Int'l Parts, Inc.*, 155 S.W.3d 50, 58 (Mo. 2005); *Dillard v. Shaughnessy, Fickel & Scott Architects, Inc.*, 943 S.W.2d 711, 715 (Mo. Ct. App. 1997).

very sequencing and transparency protections that Amendment No. 1 hard-wired. Countercl. ¶¶ 45–53, 75–77.

Having destroyed the framework that justified Fisher's releases, Hartford cannot now use the Amendment it breached as a weapon at the pleading stage. Countercl. ¶¶ 52–53, 65–69. Yet in this lawsuit Hartford asserts that Amendment No. 1 "replaced Hartford's obligations for Fisher Claims under the Subject Policies" and that it "has no obligation to Fisher and Emerson under the Subject Policies other than as provided in Amendment No. 1." Countercl. ¶¶ 2, 14, 22, 28, 66, 82–83. Hartford can no longer perform under Amendment No. 1 and still invokes Fisher's releases and reduced reimbursement rates. Countercl. ¶¶ 52–53, 58–61, 65–69. In other words, Hartford seeks to keep the benefit of Fisher's prospective releases under Amendment No. 1 without providing the forward-looking performance that induced them. Countercl. ¶¶ 3, 26–32, 35, 52–53. The parties may once have mutually agreed to release certain rights under the Policies, but that agreement was premised on Fisher receiving the ongoing reimbursement protections and sequencing advantages the Amendment promised. Countercl. ¶¶ 3, 26–32, 35. Having torn that bargain out from under Fisher by entering the 2025 Settlement and then suing to confirm that it owes Fisher nothing beyond the now-destroyed Amendment No. 1, Hartford cannot wield that same agreement as a shield at the pleading stage to argue that Fisher has failed to state a claim. Countercl. ¶¶ 14, 52–53, 58–61, 65–69, 82–85.

**III. Fisher states a claim that Hartford breached Amendment No. 1 in Counterclaim II.**

**A. Fisher may plead alternative theories of recovery.**

The Federal Rules allow claims to seek "relief in the alternative or different types of relief." Fed. R. Civ. P. 8(a)(3); *see also* 8(d)(2). Fisher may plead alternative theories of recovery and must elect its chosen remedy before submission. *Breeding v. Massey*, 378 F.2d 171, 178 (8th Cir. 1967) ("The right of a plaintiff to try his case on alternate theories has uniformly been upheld in

the federal courts and plaintiff cannot be required to elect upon which theory to proceed."); *Twehous Excavating, Inc. v. Jefferson City Ret., LLC*, 613 S.W.3d 499, 505 (Mo. Ct. App. 2020); *Higdon v. Rana*, 14 N.W.3d 384 (Iowa Ct. App. 2024) ("Iowa law also recognizes that a plaintiff may plead alternative theories of recovery."); *and* Iowa R. Civ. P. 1.231 ("A single plaintiff may join in the same petition as many causes of action, legal or equitable, independent or alternative, as there are against a single defendant."). Fisher may plead alternative remedies and make any election before submission, not on a Rule 12(b)(6) motion. The mere availability of a damages remedy does not foreclose rescission or justify dismissal at the pleading stage. *See Sharp v. Tamko Roofing Prods., Inc.*, 695 N.W.2d 43, 48 (Iowa Ct. App. 2004).

Identifying monetary damages is too speculative at this juncture. Estimating Fisher's future defense and indemnity costs would require assumptions about the timing, magnitude, and allocation of future claims that cannot be known now. Fisher may elect monetary damages before submission, but election is not required at this stage and certainly does not justify dismissal for failure to state a claim. *See Bass v. Bowmar Nutrition, L.L.C.*, No. 421CV00307JAJHCA, 2022 WL 18781203, at *8 (S.D. Iowa Feb. 8, 2022) (discussing Rule 8's alternative pleading authorization). Hartford's overly simplistic proposition that Fisher can obtain monetary damages, while potentially true, does not mean Fisher has failed to state a claim.

### B. The alleged merits of Hartford's affirmative defenses do not justify dismissal for failure to state a claim.

The existence of an affirmative defense is not a basis for Rule 12(b)(6) dismissal. The question is whether the complaint states a plausible claim for relief, not whether Hartford will ultimately prevail on a limitations, waiver, or other defense. *See Weatherly v. Ford Motor Co.*, 994 F.3d 940, 943–44 (8th Cir. 2021) (explaining that affirmative defenses such as statutes of limitations ordinarily do not warrant Rule 12(b)(6) dismissal unless the complaint itself establishes

the defense); Fed. R. Civ. P. 8(c)(1). Hartford's insistence that Fisher "never complained, objected, or reached out to Mr. Ruggeri," and its related waiver and estoppel theories, merely raise fact-bound affirmative defenses. They turn on who said what to whom and when, which are issues for discovery and, at most, summary judgment—not grounds to defeat Fisher's well-pleaded counterclaims under Rule 12(b)(6).

Fisher has adequately pleaded a breach of Amendment No. 1. Whether Fisher knew about Hartford's settlement negotiations with Monsanto does not change that: Fisher was not invited to those discussions, was never shown any draft or final version of the 2025 Settlement, and was repeatedly told its rights would not be impaired. Countercl. ¶¶ 38–44. Only when Fisher later sought reimbursement did it discover that its rights under Amendment No. 1 had been impaired. Countercl. ¶¶ 45–47, 50–51. Those allegations, taken as true, preclude dismissal for failure to state a claim.

### C. Fisher's breach of contract claim survives 12(b)(6) because demanding performance and initiating JAMS mediation do not ratify Hartford's breach.

Rescission is a recognized remedy when a party's material breach or inability to perform defeats the object of the contract—the injured party is not required to anticipate a breach and rescind in advance. *See Aurora Nat'l Life Assur. Co. v. Harrison*, 462 F. Supp. 2d 951, 969–70 (S.D. Iowa 2006), *aff'd sub nom. Aurora Nat'l Life Assur. Co. v. Ewing*, 527 F.3d 1358 (8th Cir. 2008); *Potter v. Oster,* 426 N.W.2d 148, 149–50 (Iowa 1988). Hartford argues that because Fisher demanded performance and initiated JAMS mediation, Fisher somehow "ratified" Amendment No. 1 and lost the ability to seek rescission. But the ratification cases Hartford cites involve parties who, after discovering the alleged wrong, continued to accept the contract's benefits, retaining consideration or continuing to use the goods. *See State ex rel. Cary v. Trimble*, 43 S.W.2d 1050, 1052–53 (Mo. 1931) (defrauded buyer suing while retaining secured note); *Paramount Sales Co.*

*v. Stark*, 690 S.W.2d 500, 504–05 (Mo. Ct. App. 1985) (buyer kept goods instead of returning them); *Caraveo v. Dumas-Milner Chevrolet Corp.*, 377 S.W.2d 482, 485 (Mo. App. 1964) (buyer continued to use automobile for months after failed efforts to modify the agreement). Here, by contrast, once Fisher learned of the 2025 Settlement and its impact, there were no benefits of Amendment No. 1 left for Fisher to accept. Hartford had already used that settlement to exhaust shared Policies, dismantle the invoice-priority framework, and impair Fisher's coverage rights. Countercl. ¶¶ 38–48, 50–51. Rather than "ratifying" Hartford's breach, Fisher invoked the JAMS mediation procedure and demanded that Hartford honor its obligations under Amendment No. 1, and when Hartford instead sued for declaratory relief, Fisher asserted rescission and breach as counterclaims. *Id.* ¶¶ 52–53, 65–69. Exercising the contract's dispute-resolution mechanism and insisting on performance after a material breach is not ratification as a matter of law. Hartford's ratification theory therefore provides no basis to dismiss Fisher's rescission claim under Rule 12(b)(6).

### D. Hartford's contractual defenses do not justify dismissal.

Section II.D of Hartford's memorandum in support of its motion to dismiss does not argue that Fisher's counterclaims fail to satisfy Rule 12(b)(6)—it simply advances Hartford's view of the contract and its asserted defenses. Even if those contract arguments ultimately had force, the Rule 12(b)(6) inquiry is whether Fisher has pleaded a plausible claim for relief, not whether Hartford will prevail on its preferred contract interpretation or affirmative defenses. Courts routinely decline to resolve such merits-based contentions on a motion to dismiss when doing so would require weighing competing inferences or construing disputed contractual provisions. *See Sanderson v. Bailey*, No. 4:23CV1242 JAR, 2024 WL 3010807, at *6 (E.D. Mo. June 14, 2024) (holding that arguments "improper for purposes of a Rule 12(b)(6) motion" are those that "would require the Court to address the merits"). That should be the result here.

## IV. Fisher states a claim in Counterclaim III for declaratory relief under the same case and controversy Hartford presented to this Court.

A declaratory judgment action is appropriate when, as here, there is a substantial, immediate controversy between parties with adverse legal interests. *See MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007); *Maytag Corp. v. Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am.*, 687 F.3d 1076, 1081 (8th Cir. 2012). Fisher's Counterclaim III seeks a declaration concerning the same live controversy Hartford put before the Court in its own Count III—whether Amendment No. 1 was rescinded by the 2025 Settlement and whether Hartford's obligations now are governed by the original Policies or by Amendment No. 1.[2] *See Vorbeck v. Schnicker*, 660 F.2d 1260, 1265 (8th Cir. 1981) (declaratory relief requires an actual controversy but does not turn on which side initiated the claim). Where such a live dispute exists and declaratory relief is sought, dismissal of a mirror-image declaratory counterclaim is not warranted under Rule 12(b)(6). *See MedImmune,* 549 U.S. at 127; *Maytag*, 687 F.3d at 1081.

## V. Alternative Request for Leave to Amend Counterclaim

The Court should freely grant leave to amend when justice so requires. Fed. R. Civ. P. 15(a)(2); *see also Foman v. Davis*, 371 U.S. 178, 182 (1962) (explaining that where the underlying facts may be a proper subject of relief, a litigant should be afforded an opportunity to test the claim on the merits). If the Court identifies any pleading deficiency, Fisher requests leave to amend.

## CONCLUSION

For these reasons, and accepting Fisher's well-pleaded allegations as true, Hartford's motion to dismiss should be denied in its entirety, and the parties' dispute over Hartford's coverage obligations under the Policies and Amendment No. 1 should proceed on a full factual record rather than resolved on the pleadings.

---

[2] *Compare* Countercl. ¶¶ 80–85 with Compl. ¶¶ 103–06; Compl., Prayer for Relief ¶¶ A–E.

Dated: September 25, 2026

Respectfully submitted,

**DOWD BENNETT LLP**

By: */s/ James F. Bennett*
James F. Bennett #46826MO
John D. Comerford #60164MO
7676 Forsyth Blvd, Suite 1900
St. Louis, MO 63105
Phone: (314) 889-7300
Fax: (314) 863-2111
jbennett@dowdbennett.com
jcomerford@dowdbennett.com

-and-

Payton Roberts (*Pro Hac Vice*)
2100 Ross Ave., Suite 980
Dallas, TX 75201
Phone: (469) 518-7971
Fax: (314) 863-2111
proberts@dowdbennett.com

***Attorneys for Defendants / Counterclaimants Fisher Controls International LLC and Emerson Electric Co.***

## CERTIFICATE OF SERVICE

I certify that on September 25, 2026, I filed the foregoing with the Court's electronic filing system, which will serve notice and copies of the same on all counsel of record.

*/s/ James F. Bennett*

***Attorney for Defendants / Counterclaimants Fisher Controls International LLC and Emerson Electric Co.***